# 25-10855

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**UNITED STATES OF AMERICA,**
Plaintiff-Appellee

v.

**CHARLES LENARD BROWNLEE,**
Defendant-Appellant

On Appeal from the United States District Court
For the Northern District of Texas
Fort Worth Division
District Court No. 4:24-CR-208-Y

## APPELLEE'S BRIEF

Ryan Raybould
United States Attorney

Lauren C. Murphree
Assistant United States Attorney
Texas State Bar No. 24085059
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401-4002
Telephone: (806) 472-7322
lauren.murphree@usdoj.gov

Attorneys for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary. Since Brownlee filed his opening brief, this Court held that the use of an automatic license plate reader (ALPR) is not a search under the Fourth Amendment, foreclosing Brownlee's first issue on appeal. *See United States v. Porter*, 170 F.4th 381 (5th Cir. 2026). Brownlee's second issue on appeal, arguing that completed Hobbs Act Robbery is not a crime of violence, is likewise foreclosed under this Court's binding precedent. Accordingly, the government does not believe that oral argument will significantly aid the Court in its decisional process.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF AUTHORITIES .................................. iii

STATEMENT OF JURISDICTION .................................. 1

STATEMENT OF THE ISSUES .................................. 1

STATEMENT OF THE CASE .................................. 2

1. Brownlee robs five cash-checking and payday lending stores at gunpoint—ultimately stealing over $20,000 in cash .................................. 2

2. Law enforcement utilizes a variety of investigative tools—including automatic license plate readers—to identify and ultimately apprehend Brownlee .................................. 5

3. After the district court denies Brownlee's motion to suppress and his motion to dismiss, a jury convicts Brownlee on all twelve counts, and the district court imposes a 720-month sentence ...... 10

SUMMARY OF THE ARGUMENT .................................. 12

ARGUMENT AND AUTHORITIES .................................. 13

1. The collection and retention of ALPR data does not violate the Fourth Amendment .................................. 13

   A. Brownlee lacks standing to contest the use of ALPR cameras to identify and locate his sister's vehicle .............. 14

   B. Even if Brownlee has standing, this Court has held that use of ALPR data is not a search under the Fourth Amendment .................................. 19

2. Completed Hobbs Act robbery is a crime of violence ................. 28

A. This Court has held, post-*Taylor*, that completed Hobbs Act robbery is a crime of violence .......................................... 28

B. The Hobbs Act robbery statute is divisible........................ 30

CONCLUSION............................................................................. 35

CERTIFICATE OF COMPLIANCE ....................................................... 35

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Cardwell v. Lewis*, 417 U.S. 583 (1974)........................................................ 20

*Carpenter v. United States*, 585 U.S. 296 (2018) ........................................*passim*

*Descamps v. United States*, 570 U.S. 254 (2013) ........................................29, 30

*Diaz-Rodriguez v. United States*, 2023 WL 5355224 (1st Cir. Aug. 14, 2023) .... 33

*Green v. Garland*, 79 F.4th 920 (8th Cir. 2023) ............................................ 33

*Johnson v. United States*, 559 U.S. 133 (2010) .............................................. 29

*Katz v. United States*, 389 U.S. 347 (1967) .................................................... 20

*Mathis v. United States*, 579 U.S. 500 (2016)..................................... 29, 31, 32

*New York v. Class*, 475 U.S. 106 (1986)...................................................20, 24

*Olabisiomotosho v. City of Houston*, 185 F.3d 521 (5th Cir. 1999) ..................... 23

*Powell v. United States*, 2022 WL 17819775 (6th Cir. Aug. 25, 2022) ............. 33

*Rakas v. Illinois*, 439 U.S. 128 (1978)............................................... 14, 16, 18

*Riley v. California*, 573 U.S. 373 (2014)......................................................... 27

*Rinaldi v. Sylvester*, 2025 WL 2682691 (S.D.N.Y. Sept. 19, 2025) .................. 25

*Scholl v. Illinois State Police*, 776 F. Supp. 3d 701 (N.D. Ill. 2025) ................... 25

*United States v. Baker*, 49 F.4th 1348 (10th Cir. 2022) .................................... 33

*United States v. Barrett*, 102 F.4th 60 (2d Cir. 2024) ..................................33, 34

*United States v. Beaudion*, 979 F.3d 1092 (5th Cir. 2020) ................................ 18

*United States v. Bowens*, 907 F.3d 347 (5th Cir. 2018).................................... 33

**Federal Cases, continued** **Page(s)**

*United States v. Bowers*, 2021 WL 4775977 (W.D. Pa. Oct. 11, 2021)............. 25

*United States v. Buck*, 847 F.3d 267 (5th Cir. 2017) .................................... 1, 32

*United States v. Cabrera*, 651 F. App'x 118 (3d Cir. 2016)............................... 18

*United States v. Cooper*, 2025 WL 35035 (E.D. La. Jan. 6, 2025) .................... 26

*United States v. Davis*, 903 F.3d 483 (5th Cir. 2018) ...................................... 32

*United States v. Eccleston*, 2022 WL 3696664 (10th Cir. Aug. 26, 2022)......30, 33

*United States v. Ellison*, 462 F.3d 557 (6th Cir. 2006) .................................... 23

*United States v. Gomez*, 276 F.3d 694 (5th Cir. 2001)...................................... 13

*United States v. Greer*, 939 F.2d 1076 (5th Cir. 1991)................................15, 17

*United States v. Hernandez*, 647 F.3d 216 (5th Cir. 2011) ............................... 15

*United States v. Hill*, 63 F.4th 335 (5th Cir. 2023) ............................. 11, 28, 30

*United States v. Ivey*, 60 F.4th 99 (4th Cir. 2023)........................................... 33

*United States v. Jiles*, 2024 WL 891956 (D. Neb. Feb. 29, 2024) ..................... 26

*United States v. Jones*, 565 U.S. 400 (2012) ....................................... 18, 19, 21

*United States v. Knotts*, 460 U.S. 276 (1983) ..................................... 20, 22, 24

*United States v. Linehan*, 56 F.4th 693 (9th Cir. 2022) ................................... 33

*United States v. Madrid-Paz*,
2023 WL 7013354 (5th Cir. Oct. 24, 2023) ..............................11, 30, 32, 33

*United States v. Martin*, 753 F. Supp. 3d 454 (E.D. Va. 2024)........................ 26

*United States v. Martinez-Rodriguez*, 857 F.3d 282 (5th Cir. 2017).................... 31

**Federal Cases, continued** **Page(s)**

*United States v. Massi*, 761 F.3d 512 (5th Cir. 2014) ........................................ 13

*United States v. Newton*, 2023 WL 8074220 (5th Cir. Nov. 21, 2023) .............. 16

*United States v. Place*, 462 U.S. 696 (1983) ..............................................23, 24

*United States v. Porter*, 170 F.4th 381 (5th Cir. 2026).................................*passim*

*United States v. Rubin*, 556 F. Supp. 1123 (N.D. Cal. 2021) ........................... 26

*United States v. Smith*, 110 F.4th 817 (5th Cir. 2024),
*cert. denied*, 146 S. Ct. 356 (2025) .................................................. 14, 22, 27

*United States v. Solomon*, 136 F.4th 1310 (11th Cir. 2025) .............................. 33

*United States v. Stoney*, 62 F.4th 108 (3d Cir. 2023)........................................ 33

*United States v. Strmel*, 744 F.2d 1086 (5th Cir. 1984) ......................... 16, 17, 18

*United States v. Sturdivant*, 786 F. Supp. 3d 1098 (N.D. Ohio 2025) ............... 26

*United States v. Taylor*, 596 U.S. 845 (2022) ...................................... 12, 29, 32

*United States v. Wilcox*, 415 F. App'x 990 (11th Cir. 2011)............................. 24

*United States v. Wise*, 877 F.3d 209 (5th Cir. 2017) ........................................ 17

*United States v. Worthen*, 60 F.4th 1066 (7th Cir. 2023).................................. 33

*United States v. Yang*, 958 F.3d 851 (9th Cir. 2020)........................................ 25

**Federal Statutes and Rules** **Page(s)**

18 U.S.C. § 924(c)(3) .......... 29

18 U.S.C. § 1951(a) .......... 31

18 U.S.C. § 3231 .......... 1

18 U.S.C. § 3742(a) .......... 1

28 U.S.C. § 1291 .......... 1

Fed. R. App. P. 4(b) .......... 1

## STATEMENT OF JURISDICTION

This is a direct appeal from a conviction and sentence in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The district court entered its written judgment on July 18, 2025, (ROA.598), and Brownlee timely filed his notice of appeal on July 23, 2025, (ROA.603). *See* Fed. R. App. P. 4(b).

## STATEMENT OF THE ISSUES

1. This Court has held that law enforcement's use of Automated License Plate Readers does not constitute a search under the Fourth Amendment. Did the district court err in denying Brownlee's motion to suppress on that basis?

2. Did the district court correctly conclude—based on binding precedent—that Hobbs Act robbery is a crime of violence for purposes of Section 924(c)(3)?[1]

---

[1] Brownlee seeks to preserve for further review his argument that completed Hobbs Act robbery fails to satisfy the force clause of Section 924(c)(3)(A). (Brief at 59-60.) Brownlee correctly concedes, however, that this argument is foreclosed in the government's favor, (Brief at 59), and the government will not address it further. *See, e.g., United States v. Buck*, 847 F.3d 267, 275 (5th Cir. 2017) (rejecting the same arguments and holding that "[i]t was not error—plain or otherwise—for the district court to classify a Hobbs Act robbery as a crime of violence.").

## STATEMENT OF THE CASE

This appeal arises from a string of five armed robberies Charles Brownlee committed in five different cities within the Northern District of Texas in a span of twelve days. A jury convicted Brownlee of twelve federal felonies related to the robberies.

### 1. Brownlee robs five cash-checking and payday lending stores at gunpoint—ultimately stealing over $20,000 in cash.

In May 2024, Brownlee conspired with his girlfriend, Ashley Scott, to rob multiple Cash Store locations in the Dallas-Fort Worth metroplex. Brownlee arrived to each of the robberies in a black Hyundai SUV with a cell phone and firearm, wearing a hat and a medical mask to conceal his identity. Each robbery is summarized below.

*First*, on May 9, 2024, Brownlee entered the Cash Store in Grand Prairie, Texas, wearing a white hat, a medical mask, and black scrubs. (ROA.778.) Brownlee jumped on the counter, pulled out a gun, and told everyone in the store to put their hands up. (ROA.772, 774-75.) While jumping from counter to counter, Brownlee instructed the store manager to "get the money out of the drawers" and to put the cash in his bag. (ROA.775-76.) Once the money was out of the drawers, Brownlee directed the manager to the safe in the back of

the store and demanded that she open it. (ROA.777.) When Brownlee had all the money from the safe, he fled the store. (ROA.777-78.)

_Second_, on May 13, 2024, Brownlee entered the Cash Store in Fort Worth, Texas, wearing dark pants, an ill-fitting denim jacket, a medical mask, sunglasses, and a hat. (ROA.813-14, 821.) Brownlee pointed his firearm at the employees in the store, jumped on the counter, and demanded that they put their hands up, not look at him, and "give [Brownlee] all the money." (ROA.815, 822.) Brownlee got the money from the cash drawers and placed it inside of his jacket before he directed the store manager to the back of the store to open the safe. (ROA.823-24.) Once the safe was unlocked, Brownlee emptied it himself and fled the store. (ROA.824-25.)

_Third_, on May 18, 2024, Brownlee entered the Cash Store in Euless, Texas, wearing dark clothing, a hat, a medical mask, and a red backpack. (ROA.837-39.) Immediately upon entering the store, Brownlee started to yell "give me all the money." (ROA.840.) When a customer tried to leave, Brownlee told him not to move and not to leave. (ROA.840.) Brownlee then jumped on the counter and took cash out of the cash drawer before ordering the manager to go to the back of the store and open the safe. (ROA.840.) While pointing a gun at the manager's face, Brownlee took the money from the safe and fled the store. (ROA.840, 847.) A nearby restaurant employee

saw Brownlee running away from the Cash Store and noticed that he dropped what appeared to be a cigarette on the ground before he got into a black vehicle with a blue fuzzy steering wheel. (ROA.857, 859-60, 863.)

*Fourth*, on May 21, 2024, Brownlee entered the Cash Store in Hurst, Texas, again wearing a hat, a medical mask, an ill-fitting denim jacket, and a backpack. (ROA.916, 918, 926.) Brownlee drew his firearm, jumped on the counter, and directed the assistant store manager around the store, ordering him to empty out the cash drawers. (ROA.917.) After Brownlee had the money from the cash drawers, he asked to be taken to the back room to retrieve the money from the safe. (ROA.923.) By this point, Cash Store's corporate office believed the robberies were connected and had instructed the remaining locations in the metroplex to take the large bills out of their respective safes to prevent further loss. (ROA.929-30.) When Brownlee opened the cash bag from the safe, there was only a twenty-dollar bill remaining, which upset him. (ROA.927-28.) Brownlee took the twenty and fled the store. (ROA.931.)

*Fifth and finally*, immediately after the Hurst robbery, Brownlee entered the Cash Store in Grapevine, Texas, wearing a hat, a medical mask, and a backpack. (ROA.1052-53.) The store manager asked Brownlee to remove his hat and his mask, but Brownlee demanded the manager "give [him] the

money." (ROA.1053.) The store manager gave Brownlee the cash from the drawers before Brownlee directed her to the back of the store to retrieve the money from the safe. (ROA.1054.) This store, too, had taken most of the cash out of the safe to prevent further loss from the robberies. (ROA.1055.) When Brownlee realized there was no money in the safe, he pulled out his gun and asked the manager where the money was. (ROA.1056.) The manager told Brownlee they did not have any more money in the store, and Brownlee told her to get in the bathroom. (ROA.1056.) The store manager complied, and Brownlee fled the store. (ROA.1056.)

**2. Law enforcement utilizes a variety of investigative tools—including automatic license plate readers—to identify and ultimately apprehend Brownlee.**

The same day that Brownlee robbed the Hurst and Grapevine Cash Stores, Detective Coffee with the Euless Police Department began to investigate the Euless Cash Store robbery that had occurred three days earlier. (ROA.1077-78.) Detective Coffee soon learned that the Hurst and Grapevine stores had been hit, and law enforcement had the same suspect vehicle description for each of the robberies: a black SUV. (ROA.1078-79.) Detective

Coffee turned to an automatic license plate reader database to attempt to locate the suspect vehicle.[2] (ROA.1079.)

*Automatic license plate readers.* Like toll cameras and red-light safety cameras, automatic license plate reader (ALPR) cameras record passing license plates on public thoroughfares. (ROA.259.) Time-stamped records are then uploaded to a central repository that can be accessed by law enforcement when there is an investigatory need. (ROA.259.) The cameras do not alert to specific individuals (or the presence of individuals) in a vehicle. (ROA.260.) They do not record pedestrians. (ROA.260.) And while the ALPR technology has proven a formidable asset to investigative efforts across the United States, the system has limitations. Because ALPR cameras only take pictures of where a vehicle was at a certain location at a specific time, officers must manually generate historical searches for vehicles and then review the search results photo-by-photo. (ROA.260-61.) And, while the location, date, and time of the photographs are always accurate, the information analyzed by the system regarding the make, model, or color of a vehicle are not. (ROA.1082.)

---

[2] Detective Coffee first used the cameras and database owned by Flock Safety. Flock Safety contracts with cities across the United States to set up cameras and give cities access to the database. (ROA.1080.)

Officers must independently verify the descriptive details of any photograph. (ROA.1082-83.)

*ALPR cameras and traditional investigative tools lead officers to Brownlee.* Detective Coffee began by looking at data from specific ALPR cameras in Grapevine and Colleyville (adjacent to the Euless Cash Store) around the times of the respective robberies to determine if there was a vehicle that matched the suspect vehicle description in either location. (ROA.1084-85.) In both locations, ALPR cameras captured a black Hyundai Santa Fe with a distinctive roof rack and a unique bumper sticker—matching the description from multiple eyewitnesses at the various robbery locations. (*See* ROA.1087-88.)[3] Detective Coffee identified the vehicle's license plate from the photographs and determined the vehicle's registered owner was Keara Simmons, Brownlee's sister. (ROA.1095-96, 1117-18.) Detective Coffee then located Simmons's address in Arlington, notified other detectives in the area of the developments in the case, and headed to Arlington to look for the vehicle. (ROA.1096.)

At the same time that Detective Coffee was investigating the Euless robbery, Grapevine Police Department Detective Wolan began investigating

[3] Detective Coffee also accessed another ALPR database, Vigilant, to locate the vehicle. (ROA.1091.) In one of the Vigilant photographs, a faint and partial outline of a fuzzy steering wheel with a blue tint can be seen, further matching the eyewitness descriptions of the suspect vehicle. (ROA.1092-94; GX 42.)

the Grapevine Cash Store robbery. (ROA.1112-14.) Detective Wolan directed an analyst with the Grapevine Police Department to review the Flock database for anything that matched the suspect vehicle description. (ROA.1115-16.) The analyst identified the same black Hyundai Santa Fe that Detective Coffee identified in the area of the Grapevine Cash Store robbery at the relevant time. (ROA.1115-16.) By reviewing the ALPR database, Detective Wolan determined that the same vehicle had recently been seen in Arlington. (ROA.1118.)

Officers soon located the suspect vehicle at a park in Arlington. There, a joint task force officer saw Brownlee get out of the passenger's side of the black Hyundai Santa Fe and enter a white Dodge Journey. (ROA.1143.) Officers eventually stopped both vehicles and arrested Brownlee who was riding in the white Dodge Journey. (ROA.1121.) Inside the Dodge Journey, officers seized a medical mask, sneakers, a hat, an iPhone, and two firearms—one of which was "chambered, locked, and loaded." (ROA.1125, 1131, 1148, 1155-56.) Officers also found two receipts: one from a Walgreens in Hurst just before the Hurst robbery, and one for a car wash in Arlington just after the Grapevine

robbery. (ROA.1135.) Brownlee had $3,800 cash on his person when he was arrested. (ROA.1157.)

In addition to accessing the ALPR database, area detectives utilized traditional tools to investigate the string of robberies. Fort Worth Police Department Detective and FBI Task Force Officer Cartwright obtained surveillance video from a Walgreens and a Walmart near the Fort Worth Cash Store that showed Brownlee arriving at the Cash Store at the time of the robbery and fleeing six or seven minutes later. (ROA.1219, 1231-32.) The Grand Prairie and Hurst Police Departments, too, obtained surveillance footage from surrounding businesses that captured Brownlee arriving at the scene of the respective robberies. (ROA.781-805, 938, 942.)

Officers also obtained a search warrant for the call detail records of the cell phones recovered from the vehicles. (ROA.1160-61.) Analysis of Brownlee, Scott, and Simmons's historical cell site location information (CSLI) revealed that at least one of their devices was in the area of each robbery during the relevant time periods.[4] (ROA.1187, 1189, 1190-92, 1195.) Through analysis of the recovered cell phones, officers located searches for Cash Stores in the metroplex, photographs of Brownlee and Scott with large

[4] The phone number associated with Brownlee was not activated until after the Grand Prairie robbery on May 9, but Simmons's phone was in the area of the robbery during the relevant time period. (ROA.1186-88.)

amounts of cash and a gun, and audio of Scott stating "Baby, we're stealing that money, you hear me?" (ROA.1241-49, 1253.)

Finally, DNA evidence confirmed that Brownlee was the major contributor to the DNA profile recovered from the dropped cigarette outside of the Euless robbery. (ROA.1282.)

**3. After the district court denies Brownlee's motion to suppress and his motion to dismiss, a jury convicts Brownlee on all twelve counts, and the district court imposes a 720-month sentence.**

A federal grand jury charged Brownlee in a Second Superseding Indictment, alleging: (1) one count of conspiring to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One); five counts of interference with commerce by robbery, in violation of 18 U.S.C. § 1951(a), (Counts Two through Six); five counts of using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (Counts Seven through Eleven); and one count of felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1) and 924(a)(8), (Count Twelve). (ROA.309-21.) Brownlee pled not guilty and, relevant to this appeal, filed a motion to dismiss Counts Seven, Eight, and Nine of the Second Superseding Indictment, and a motion to suppress the evidence. (ROA.326, 121, 129.)

Brownlee's motion to dismiss alleged that Counts Seven, Eight, and Nine failed to state a valid offense under the elements clause of Section 924(c)

because, he claimed, the Hobbs Act is not divisible between completed robbery, attempted robbery, and conspiracy to commit robbery. (ROA.121-28.) The government responded and highlighted, among other things, that the Second Superseding Indictment charged only completed Hobbs Act robbery, not an attempt or a conspiracy. (ROA.183-85.) The government also cited binding Fifth Circuit precedent holding that completed Hobbs Act robbery is a crime of violence for purposes of Section 924(c). (ROA.184-85 (citing *United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023), and *United States v. Madrid-Paz*, No. 22-20397, 2023 WL 7013354 (5th Cir. Oct. 24, 2023) (unpublished)).) The district court denied the motion. (ROA.299-300.)

Brownlee's motion to suppress alleged that law enforcement's use of the ALPR cameras to locate and identify his sister's black Hyundai Santa Fe was an unlawful search in violation of the Fourth Amendment. (ROA.129-42.) In response, the government argued: (1) that Brownlee lacked standing to challenge the investigation regarding the vehicle; and (2) that there is no reasonable expectation of privacy in the appearance of a vehicle and its license plate. (ROA.229-58.) The district court agreed and denied the motion. (ROA.413-23.)

A three-day jury trial took place in March 2025, and the jury found Brownlee guilty on all twelve counts. (ROA.581-84.) The district court

sentenced Brownlee to 240 months on Counts One through Six to run concurrently, 60 months on Count Twelve to run consecutively to Counts One through Six, and 84 months each on Counts Seven through Eleven to run consecutively for an aggregate 720-month sentence. (ROA.599, 1628.)

This appeal follows.

## SUMMARY OF THE ARGUMENT

1. The district court properly denied Brownlee's motion to suppress, which contended that law enforcement's use of ALPR data violated his reasonable expectation of privacy. As an initial matter, Brownlee lacks standing to contest the use of ALPR cameras to identify and locate the vehicle he used to commit the robberies because he never established a valid possessory or property interest in the vehicle. Moreover, even assuming Brownlee could show standing, his contention that law enforcement's use of ALPR cameras constitutes a search under the Fourth Amendment and requires a warrant is foreclosed by this Court's decision in *United States v. Porter*, 170 F.4th 381 (5th Cir. 2026).

2. The district court also properly found that completed Hobbs Act robbery is a crime of violence for purposes of Section 924(c)(3). Notwithstanding *United States v. Taylor*, 596 U.S. 845 (2022), which held that attempted Hobbs Act robbery does not qualify as a crime of violence under Section 924(c)(3), this Court and every circuit to address the issue continues to hold that

completed Hobbs Act robbery remains a crime of violence. The statute is plainly divisible, and under a modified categorical approach, there is no question that Brownlee was charged with, and convicted of, completed Hobbs Act robbery.

This Court should affirm.

## ARGUMENT AND AUTHORITIES

### 1. The collection and retention of ALPR data does not violate the Fourth Amendment.

**Standard of Review**

When reviewing the denial of a suppression motion, this Court reviews factual findings for clear error and legal conclusions—"including whether an expectation of privacy is reasonable under the circumstances"—de novo. *United States v. Porter*, 170 F.4th 381, 386 (5th Cir. 2026) (quoting *United States v. Gomez*, 276 F.3d 694, 697 (5th Cir. 2001)). The Court views the evidence "in the light most favorable to the Government, as the prevailing party below," *id.*, and "[t]he district court's ruling should be upheld if there is any reasonable view of the evidence to support it," *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014) (internal quotation marks omitted).

**Discussion**

As an initial matter, Brownlee failed to establish Fourth Amendment standing in the district court. Further, even assuming Brownlee has standing,

under this Court's decision in *Porter*, law enforcement's use of ALPR data to prevent and solve crime does not violate any reasonable expectation of privacy and is not a search under the Fourth Amendment. 170 F.4th at 386-87. Accordingly, the district court correctly denied Brownlee's motion to suppress.

### A. Brownlee lacks standing to contest the use of ALPR cameras to identify and locate his sister's vehicle.

The district court correctly concluded that Brownlee failed to establish a possessory or property interest in his sister's Hyundai Santa Fe and therefore lacked standing to contest law enforcement's use of ALPR data to identify and locate the vehicle. (ROA.413-23.) "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). To meet this burden, a defendant must show that the government violated his reasonable expectation of privacy—that is, Brownlee must "have exhibited an actual (subjective) expectation of privacy" and such "expectation must be one that society is prepared to recognize as 'reasonable.'" *United States v. Smith*, 110 F.4th 817, 831 (5th Cir. 2024) (cleaned up), *cert. denied*, 146 S. Ct. 356 (2025).

This Court has held that "a passenger without a property or possessory interest in a vehicle cannot challenge its search." *United States v. Greer*, 939 F.2d 1076, 1093 (5th Cir. 1991). And while a person who "has borrowed an automobile from another, with the other's consent . . . becomes a lawful possessor of the vehicle and thus has standing to challenge its search," *United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir. 2011), the defendant bears the burden of establishing standing, *id*. at 219. Here, Brownlee fails to carry that burden.

*First*, Brownlee fails to establish a possessory interest in the black Hyundai Santa Fe for each of the robberies. The only evidence regarding Brownlee's permission to use his sister's vehicle comes from two statements from Simmons that: (1) Brownlee would sometimes borrow her Hyundai Santa Fe; and (2) that Brownlee borrowed the Hyundai on May 21 "for a little bit." (ROA.157, 274 (estimating that Brownlee had her Hyundai between hours of 2:30p.m. and 6:00p.m.).) Simmons's statements that Brownlee sometimes *used* the car do not unequivocally establish that Brownlee had *permission* to do so, and in any event, Brownlee never addressed his right to occupy the vehicle on May 9, May 13, or May 18—the dates of the first three robberies.[5] And when

[5] When asked, Simmons could not recall if Brownlee borrowed her vehicle during the Euless (May 18) or Forth Worth (May 13) robberies. (ROA.157, 274.) The May 18 date is particularly important because Detective Coffee used the ALPR database to locate Simmons's vehicle near the Euless robbery. (ROA.1087-88.)

the government asserted that Brownlee lacked standing in its response to Brownlee's motion to suppress in the district court, Brownlee never countered that argument. (*See* ROA.239-42 (arguing that Brownlee lacked standing to contest the use of ALPRs).) Accordingly, the district court reasonably concluded that Brownlee failed to establish that he had a valid possessory or property interest in Simmons's vehicle. (ROA.413-23); *see United States v. Newton*, No. 22-20375, 2023 WL 8074220, at *1 (5th Cir. Nov. 21, 2023) (unpublished) (holding the defendant lacked standing to challenge the search of his girlfriend's car—which he used to rob a bank—because he had no possessory interest in the car).

*Second*, Brownlee fails to establish standing for the additional reason that, for two of the robberies (the May 13 and May 18 robberies) and, on May 21, when he was arrested, he was a passenger in the vehicle. On those days and times, Brownlee has an even greater hurdle to establishing Fourth Amendment standing to challenge use of the ALPR photos to identify the vehicle because a passenger in a vehicle owned by another has no legitimate expectation of privacy in that vehicle. *See United States v. Strmel*, 744 F.2d 1086, 1088 (5th Cir. 1984). In *Rakas v. Illinois*, for example, the Supreme Court held that a *passenger* in a getaway car from a bank robbery lacked standing to challenge a search of the vehicle he was riding in. 439 U.S. at 148-49. This

Court has followed *Rakas* to hold that "a passenger in a vehicle owned by another, absent other circumstances, does not have a legitimate expectation of privacy in the car." *Strmel*, 744 F.2d at 1088; *Greer*, 939 F.2d at 1093 (interpreting *Rakas* to hold that a passenger without a property or possessory interest in a vehicle cannot challenge its search); *United States v. Wise*, 877 F.3d 209, 218 (5th Cir. 2017) (holding that a commercial bus passenger lacked standing to challenge a search of the bus, and noting that passengers traveling on commercial buses resemble automobile passengers who lack any property or possessory interest in the automobile).

Here, the evidence showed that Brownlee was merely a passenger in the May 13 and May 18 robberies, as well as when he was apprehended on May 21. Specifically, at trial, Brownlee's girlfriend Scott admitted to being the getaway driver for both the Fort Worth (May 13) and the Euless (May 18) robberies. (ROA.1295, 1313-17, 1321.) On May 21, officers used Flock cameras to locate Brownlee in Arlington and personally watched him get out of the passenger's side of the Hyundai Santa Fe.[6] (ROA.146.) Thus, under *Rakas* and this Court's precedent, Brownlee had no reasonable expectation of privacy in a vehicle he was riding in as a passenger. And, Brownlee never even

[6] While Brownlee was a passenger in the Hyundai Santa Fe when he was apprehended, Scott testified at trial that she did not go with him to the May 21 robberies because she was "sobering up," indicating that Brownlee drove the Hyundai Santa Fe to and from the Hurst and Grapevine robberies. (ROA.1325-29.)

addressed his status as passenger in the district court. For this additional reason, Brownlee failed to show that he had standing to challenge law enforcement's use of the ALPR data with respect to the May 13 and May 18 robberies and his May 21 arrest. *See Strmel*, 744 F.2d at 1088; *Rakas*, 439 U.S. at 148-49.

In a similar context, courts have routinely concluded that defendants mounting Fourth Amendment challenges to the installation of a GPS tracking device on vehicles owned or possessed by others lacked standing to bring those challenges when they were mere passengers in the vehicle. *See, e.g., United States v. Cabrera*, 651 F. App'x 118, 122 (3d Cir. 2016) (affirming the denial of a motion to suppress based on lack of standing to challenge GPS tracking of a car's movements where the defendant was a mere passenger and had no protected property interest in the car). And recently, this Court affirmed the denial of a motion to suppress on standing grounds where a defendant sought to suppress GPS location information gleaned from his girlfriend's phone while they traveled in a vehicle together. *United States v. Beaudion*, 979 F.3d 1092, 1099-100 (5th Cir. 2020). This Court rejected the argument that the defendant had Fourth Amendment standing "simply because [he] decided to ride with [his girlfriend]."[7] *Id*. So too, here. Brownlee has failed to show that

[7] While Brownlee is correct that the Supreme Court in *Jones* stated that Jones "had at least the property rights of a bailee" in his wife's car, the facts of *Jones* are distinguishable. (Brief

he had any reasonable expectation of privacy in a vehicle that was not his—and that at relevant times he was merely a passenger in.

In short, the district court correctly concluded that Brownlee failed to establish a possessory or property interest in his sister's Hyundai Santa Fe and consequently lacked standing to contest law enforcement's use of ALPR data to identify and locate the vehicle.

### B. Even if Brownlee has standing, this Court has held that use of ALPR data is not a search under the Fourth Amendment.

In any event, even assuming Brownlee has standing to challenge law enforcement's use of ALPR data, the district court nonetheless correctly denied his motion to suppress because he failed to show any Fourth Amendment violation. As this Court recently held in *Porter*, the use of ALPR data does not invade any reasonable expectation of privacy and therefore is not a search under the Fourth Amendment. *Porter*, 170 F.4th at 386 ("[T]he use of an [A]LPR system did not invade any reasonable expectation of privacy and did not constitute a search, so no warrant was required.").

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

at 48 (citing *United States v. Jones*, 565 U.S. 400, 404 n.2 (2012)).) The vehicle at issue was registered to Jones's wife, but there was no dispute that Jones was "the exclusive driver." *Jones*, 565 U.S. at 404 n.2. Moreover, the district court concluded that Jones had Fourth Amendment rights in the vehicle, and the government did not challenge that determination. *Id*. None of those same facts exist here.

seizures." U.S. Const. Amend. IV. As relevant here, a Fourth Amendment search occurs when the government violates "certain expectations of privacy . . . that society is prepared to recognize as reasonable." *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (internal quotation marks omitted). In general, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). And a person "has lesser expectation of privacy in a motor vehicle" because a vehicle "has little capacity for escaping public scrutiny" while it "travels public thoroughfares . . . in plain view." *New York v. Class*, 475 U.S. 106, 112-13 (1986) (quoting *Cardwell v. Lewis*, 417 U.S. 583 (1974)). For those reasons, there is no expectation of privacy that "extend[s] to visual observation of [an] automobile" when "[v]isual surveillance from public places . . . would have sufficed to reveal all" the same information to the government. *United States v. Knotts*, 460 U.S. 276, 282 (1983).

This Court recently applied these same precedents to reject a defendant's challenge to law enforcement use of ALPR data to locate and stop a vehicle associated with criminal activity. *See Porter*, 170 F.4th at 386-87. The Court distinguished *Carpenter*, *Jones*, and *Smith*—the same cases Brownlee relies on—to hold that use of ALPR data does not constitute a search: "the [A]LPR data in the instant case provides only periodic information about a vehicle's

location when a vehicle passes . . . where an [A]LPR camera is stationed . . . and is much more limited than CSLI and geofence data, which is capable of capturing a greater volume of comprehensive information with a higher degree of quality and precision." *Id*. at 387.

That reasoning is entirely consistent with the Supreme Court's prior decision in *Carpenter*, which was explicitly "narrow." 585 U.S. at 316. It held that, in certain narrow circumstances, the government performs a Fourth Amendment search when it uses technology (for an extended period of time) that "provides an all-encompassing record of [a person's] whereabouts," including "beyond public thoroughfares," and thus "provides an intimate window into a person's life." *Id*. at 311 (discussing "historical cell-site records" used to "map[] a cell phone's location over the course of 127 days"). Similarly, in *Jones*, a majority agreed that "long[] term GPS monitoring" of a vehicle constitutes a search. 565 U.S. at 430 (Alito, J., concurring); *see id*. at 415 (Sotomayor, J., concurring). And in *Smith*, this Court rejected use of geofence data where even "a brief snapshot can expose highly sensitive information" via data that "is considerably more precise" than even "cell-site

location information." *See Smith*, 110 F.4th at 823, 833 (internal citation and quotation omitted).[8]

Such circumstances are not present here—not even close. *See Porter*, 170 F.4th at 386-87 & nn. 6, 10, 11 (distinguishing *Carpenter* and *Smith*). Indeed, the collection and retention of ALPR data (which is limited to license plates on public streets) results from precisely the sort of "augmented visual surveillance" of vehicles "on public thoroughfares" that the Supreme Court has confirmed is not a search. *Carpenter*, 585 U.S. at 306 (quoting *Knotts*, 460 U.S. at 281). If anything, the use of a beeper to track a vehicle (which *Knotts* held was not a search) is more intrusive because a beeper enables law enforcement officers to follow in realtime the movements of an entire "automotive journey," including when the vehicle enters private property. *Knotts*, 460 U.S. at 285.

The use of ALPR data is therefore nothing like the detailed tracking at issue in *Jones*, *Carpenter*, and *Smith*. *See Porter*, at 387. As the district court noted, "[t]he images captured by the Flock cameras were visual in nature, the captured images were of the exterior and the license plate of the Hyundai, and the photos were taken on public streets." (ROA.422-23.) The ALPR cameras

[8] The Supreme Court recently granted certiorari in *United States v. Chatrie*, No. 25-115, to determine whether a geofence warrant complies with the Fourth Amendment.

do not "follow [a vehicle's] owner beyond public thoroughfares." *Carpenter*, 585 U.S. at 311. Indeed, the ALPR data here merely provided a snapshot of the Hyundai at certain locations at particular times. The data does not "continuously reveal[]" a vehicle's specific location. *Id.* at 309; (*see also* ROA.1118 (explaining that Flock is a historical system that does not provide live tracking).) And nothing in the record supports Brownlee's assertion of a "comprehensive chronicle of an individual's movements." (*Cf.* Brief at 31.)

To the contrary, ALPR data collection is an "investigative procedure that is . . . limited both in the manner in which the information is obtained and in the content of the information revealed." *United States v. Place*, 462 U.S. 696, 707 (1983) (holding that a canine sniff is not a search under the Fourth Amendment). An ALPR photograph is "much less intrusive than a typical search" because it discloses "only the presence or absence" of a license plate in a particular location. *Id.* The content of that information is far from private or intimate: "The very purpose of a license plate number, like that of a [VIN], is to provide identifying information to law enforcement officials and others," and it is established that a driver has no reasonable expectation of privacy in a car's license plate. *See United States v. Ellison*, 462 F.3d 557, 561, 563 (6th Cir. 2006) (citations omitted); *accord Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) ("A motorist has no privacy interest in her license plate

number."). Indeed, "it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile." *Class*, 475 U.S. at 114; *accord United States v. Wilcox*, 415 F. App'x 990, 992 (11th Cir. 2011) (there is no "reasonable expectation of privacy in [a] plainly visible license plate"). And because of the limited information they gather, ALPR cameras do not incidentally "expose . . . items that otherwise would remain hidden from public view." *Place*, 462 U.S. at 707.

In particular, here, the ALPR photographs did not reveal anything to law enforcement that traditional investigative methods did not. *See Knotts*, 460 U.S. at 282. The ALPR cameras did not use invasive surveillance techniques such as "thermal imaging, body movement recognition, or facial recognition." (ROA.423.) Instead, the ALPR photographs only captured the Hyundai Santa Fe—not Brownlee himself—on public streets near the respective robberies. (ROA.1086, 1088-89, 1115; GX 43-46.) Traditional surveillance video obtained from surrounding businesses, in contrast, showed Brownlee arriving at, entering, and leaving the scene of the robberies—often from multiple angles. (*See, e.g.*, ROA.791-805, 938-48; GX 8-13, 15-18, 20-23.) The ALPR photographs and surrounding business surveillance footage were further corroborated by Brownlee's, Scott's, and Simmons's historical CSLI data,

which consistently placed Brownlee near the scene of each robbery. (ROA. 1187, 1189, 1190-92, 1195.) And Brownlee's own DNA put him at the scene of the Euless robbery. (ROA.857, 1282.) Simply put, although ALPR photographs played a valuable role in helping to identify the vehicle that Brownlee used, those photographs did not reveal anything in this case that traditional surveillance methods and warrant-supported searches ultimately did not.

Unsurprisingly, then, this Court is not alone in rejecting Brownlee's position. "[N]early every court" that has addressed the issue "has held that the queries of [A]LPR databases do not constitute Fourth Amendment searches." *Rinaldi v. Sylvester*, No. 24-CV-272, 2025 WL 2682691, at *17 (S.D.N.Y. Sept. 19, 2025). Those courts recognize—as this Court has—that "[t]he [A]LPR system is not capable of tracking the 'whole of [an individual's] physical movements,' much less 'for a very long period,' to the extent that a cell phone can." *Porter*, 170 F.4th at 386 (citing *Carpenter*, 585 U.S. at 310-11); *accord Scholl v. Illinois State Police*, 776 F. Supp. 3d 701, 719-20 (N.D. Ill. 2025). Unlike historical CSLI or geofencing, ALPR data "is more akin to the conventional surveillance methods, such as security cameras, that the *Carpenter*

court was careful not to call into question." *United States v. Bowers*, 2:18-CR-00292-DWA, 2021 WL 4775977, at *3 (W.D. Pa. Oct. 11, 2021).[9]

Faced with this Court's recent decision in *Porter,* as well as the decisions of numerous other courts addressing the issue, Brownlee cannot identify a single holding that the use of ALPR technology constitutes a search. Instead, Brownlee can only make hyperbolic arguments about a future Panopticon. (*See* Brief at 43-45.) Plainly, the ALPR cameras in the DFW metroplex do not subject anyone to observation "during every instant of time." (*Cf.* Brief at 43.) The record firmly demonstrates that ALPR cameras "do not capture or otherwise monitor where a vehicle travels . . . before or after it is photographed and once it is outside of the camera's frame." (ROA.260.)

Brownlee's reference to the general warrants that "the Fourth Amendment was designed to prevent" fares no better. (Brief at 44-45.) True,

---

[9] *See also United States v. Yang*, 958 F.3d 851, 862 (9th Cir. 2020) (Bea, J., concurring) (concluding that the argument that ALPR cameras provide the same degree of information at issue in Carpenter "falls apart under the barest of scrutiny); *United States v. Rubin*, 556 F. Supp. 1123, 1130 (N.D. Cal. 2021) (concluding that ALPR data is not "remotely comparable to the 'detailed, encyclopedic' information at issue in *Carpenter*"); *United States v. Martin*, 753 F. Supp. 3d 454, 471 (E.D. Va. 2024) (holding that the use of ALPR data is "meaningfully different from the facts in . . . *Carpenter*"); *United States v. Sturdivant*, 786 F. Supp. 3d 1098, 1113 (N.D. Ohio 2025) (holding that the use of ALPR data "does not present a privacy threat analogous to the one in *Carpenter*"); *United States v. Cooper*, No. 23-131, 2025 WL 35035, at *6-7 (E.D. La. Jan. 6, 2025) (holding that the use of ALPR data "do[es] not support a reasonable expectation of privacy . . . within the reasoning of *Carpenter*"); *United States v. Jiles*, No. 8:23-CR-98, 2024 WL 891956, at *19 (D. Neb. Feb. 29, 2024) (holding that ALPR data is "substantially limited relative to a GPS monitor, as in Jones, or cell-site location information, as in *Carpenter*").

"[t]he Fourth Amendment was the founding generation's response to the reviled 'general warrants' . . . of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity." *Smith*, 110 F.4th at 836 (quoting *Riley v. California*, 573 U.S. 373, 403 (2014)). But the use of cameras to collect license plate location information on public roads does not come close to the invasive rummaging of one's home in the colonial era. *Cf. id*. Finally, Brownlee's claim that ALPR cameras provide a "'detailed, encyclopedic, and effortlessly compiled' record of current and historical movements," (Brief at 31), is belied by the record, (ROA.259, 1082, 1118), and this Court's precedent, both of which confirm that the ALPR database does not follow "the whole of [an individual's] physical movements." *Porter*, at 386-87.

In sum, Brownlee fails to allege a cognizable search. ALPR cameras reveal nothing more than an individual's license plate on a public thoroughfare where there is no reasonable expectation of privacy. Consequently, there is no threat that the system could delve into the "near perfect" surveillance systems the Court warned about in *Carpenter*. 585 U.S. at 297. Brownlee presents no authority that would warrant a different conclusion, and he cannot overcome this Court's recent holding in *Porter*. As such, the district court correctly

concluded that law enforcement's reliance on the ALPR data was not a search under the Fourth Amendment.

**2. Completed Hobbs Act robbery is a crime of violence.**

**Standard of Review**

This Court should review Brownlee's argument that Hobbs Act robbery is not divisible as between attempted robbery, conspiracy to commit robbery, and/or completed robbery de novo. *See United States v. Hill*, 63 F.4th 335, 362 (5th Cir. 2023).

**Discussion**

Completed Hobbs Act robbery was a crime of violence under Section 924(c) before *Taylor*, and it remains a crime of violence after *Taylor*. Brownlee—who was charged with, and convicted of, completed robbery—argues otherwise, insisting that the Hobbs Act robbery statute is indivisible and provides only alternative means of committing a single offense (as opposed to different offenses with different elements) and that because one of those alternative means (attempted robbery) is not a crime of a violence, the whole statute necessarily fails to qualify as a crime of violence. This Court's precedent (consistent with every circuit that has addressed the issue) forecloses Brownlee's argument.

### A. This Court has held, post-*Taylor*, that completed Hobbs Act robbery is a crime of violence.

Brownlee argues that Hobbs Act robbery under 18 U.S.C. § 1951(a) is indivisible. (Brief at 52-58.) That argument matters because it shapes this Court's analysis of whether the statute of his conviction qualifies as a crime of violence under the elements clause of Section 924(c)(3). "To determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause . . . [this Court applies] a 'categorical approach.'" *Taylor*, 596 U.S. at 850. That approach tasks a court with determining whether the federal felony at issue "has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3). Importantly, the categorical approach precludes an inquiry into the facts of a particular crime and looks only at the elements of the offense of conviction. *See Taylor*, 596 U.S. at 850.

However, where a predicate conviction arises from a divisible statute—that is, a statute that "list[s] elements in the alternative, thereby defin[ing] multiple crimes"—courts apply a modified categorical approach. *See Mathis v. United States*, 579 U.S. 500, 505 (2016). That approach "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a

bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010). This method, too, focuses "on the elements, rather than the facts, of a crime." *Descamps v. United States*, 570 U.S. 254, 263 (2013). Courts employ the modified approach "to examine a limited class of documents to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Id*. at 262.

Based on *Taylor*, which held that *attempted* robbery is not a crime of violence for purposes of 924(c)(3), Brownlee moved to dismiss the Section 924(c) charge, arguing that attempted and completed Hobbs Act robbery are indivisible alternative means of committing a single offense and thus, under the categorical approach, even completed Hobbs Act robbery is not a crime of violence. (ROA.121-28.) The district court denied Brownlee's motion based on this Court's post-*Taylor* precedent holding that completed Hobbs Act robbery is a crime of violence under Section 924(c)(3). (ROA.299-300 (citing *United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023) and *United States v. Madrid-Paz*, No. 22-20397, 2023 WL 7013354, at *2 (5th Cir. Oct. 24, 2023)).) That conclusion was correct based on this Court's precedent and a straightforward application of the modified categorical approach. It is also consistent with every circuit to address the issue.

### B. The Hobbs Act robbery statute is divisible.

"Reasonable jurists could not debate that the Hobbs Act defines separate crimes of robbery, attempted robbery, and conspiracy to commit robbery." *United States v. Eccleston*, No. 20-2119, 2022 WL 3696664, at *2 (10th Cir. Aug. 26, 2022) (unpublished) (rejecting an identical argument to hold that completed Hobbs Act robbery is a crime of violence under Section 924(c)(3)). Where a statute "sets forth elements in an alternative or disjunctive structure, it is considered divisible." *United States v. Martinez-Rodriguez*, 857 F.3d 282, 285 (5th Cir. 2017). And that is exactly what the Hobbs Act robbery statute does. It states:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, *by robbery or extortion or attempts or conspires to do so*, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added); (ROA.311-15, 597). The disjunctive nature of the statute counsels in favor of divisibility. *See Mathis*, 579 U.S. at 505. Further, binding precedent underscores that Hobbs Act robbery, attempted Hobbs Act robbery, and conspiracy to commit Hobbs Act robbery each have separate elements, further weighing in favor of the statute's divisibility:

- **Completed Hobbs Act robbery** requires proof that a defendant obstructed or delayed commerce by "unlawful[ly] taking or obtaining personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." *Buck*, 847 F.3d at 274.

- **Attempted Hobbs Act robbery** requires proof that a defendant "intended unlawfully to take or obtain personal property by means of actual or threatened force" and that "he completed a 'substantial step' toward that end." *Taylor*, 596 U.S. at 851.

- **Conspiracy to Commit Hobbs Act robbery** requires proof that a defendant "agree[d] to commit" Hobbs Act robbery and "does not necessarily require proof that a defendant used, attempted to use, or threatened to use force." *United States v. Davis*, 903 F.3d 483, 485 (5th Cir. 2018), *aff'd in part, vacated in part, remanded*, 588 U.S. 445 (2019).

Each of the separate crimes plainly requires proof of different elements, and "[e]lements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis*, 579 U.S. at 504. Thus, Brownlee's "strained interpretation" that Section 1951(a) prescribes "one indivisible offense and not three separate offenses" "cannot be squared with [this Court's] precedent." *Madrid-Paz*, 2023 WL 7013354 at *2.

Because Section 1951(a) is divisible, this Court applies a modified categorical approach to determine whether Brownlee's crime of conviction satisfies the elements clause of Section 924(c)(3). *See Mathis*, 579 U.S. at 505. Relevant here, Counts Two, Three, and Four of the Second Superseding

Indictment charged Brownlee with *completed* Hobbs Act robbery, in violation of 18 U.S.C § 1951(a), and formed the basis of the Section 924(c) charges in Counts Seven, Eight, and Nine. (ROA.92-94, 96-98.) The jury instructions likewise limited the charge to completed Hobbs Act robbery. (ROA.572-73.) Applying a modified categorical approach, there is no question that Brownlee was charged with, and convicted of, completed Hobbs Act robbery—not attempted robbery—which this Court has held pre- and post-*Taylor* is a crime of violence for purposes of Section 924(c)(3). *Madrid-Paz*, 2023 WL 7013354, at *2 & n.4 (citing *United States v. Bowens*, 907 F.3d 347, 353-54 & nn. 10-11 (5th Cir. 2018) (collecting cases holding that completed Hobbs Act robbery is a crime of violence under Section 924(c)).

Every circuit that has addressed this issue agrees.[10] Uniformly, this Court's sister circuits have held that "both pre- and post-*Taylor* . . . completed Hobbs Act robbery is a crime of violence under the elements clause." *United States v. Linehan*, 56 F.4th at 700.[11] Indeed, "nothing in *Taylor's* language or

[10] *United States v. Solomon*, 136 F.4th 1310, 1321 (11th Cir. 2025); *United States v. Barrett*, 102 F.4th 60, 81-83 (2d Cir. 2024); *United States v. Stoney*, 62 F.4th 108, 112-14 (3d Cir. 2023); *United States v. Ivey*, 60 F.4th 99, 116-17 (4th Cir. 2023); *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023); *Green v. Garland*, 79 F.4th 920, 923 (8th Cir. 2023); *United States v. Linehan*, 56 F.4th 693, 700 (9th Cir. 2022); *United States v. Baker*, 49 F.4th 1348, 1359 (10th Cir. 2022); *Madrid-Paz*, 2022 WL 7013354, at *2; *Diaz-Rodriguez v. United States*, No. 22-1109, 2023 WL 5355224, at *1 (1st Cir. Aug. 14, 2023) (unpublished); *Powell v. United States*, No. 20-5694, 2022 WL 17819775, at *2 (6th Cir. Aug. 25, 2022) (unpublished).

[11] This Court, along with the Ninth, Tenth, and Eleventh Circuits have addressed divisibility head on and held that the Hobbs Act robbery statute is divisible. *See Madrid-Paz*, 2022 WL

reasoning . . . undermines [the] settled understanding that completed Hobbs Act robberies are categorically crimes of violence pursuant to [S]ection 924(c)(3)(A)." *Barrett*, 102 F.4th at 81-82 (cleaned up).

Against the great weight of the authority against him, Brownlee offers no precedent substantially supporting his claim that the Hobbs Act is divisible and completed Hobbs Act robbery is not a crime of violence under Section 924(c). Instead, he asks this Court to overlook *Madrid-Paz*, *Hill*, and all pre-*Taylor* precedent in favor of the "strained interpretation" that courts have roundly and uniformly rejected. This Court should decline that invitation and affirm.

---

7013354, at *2; *Linehan*, 56 F.4th at 700; *Eccleston*, 2022 WL 3696664, at *2; *Solomon*, 136 F.4th at 1321. The remainder of the circuits that have addressed the issue appear to assume divisibility before holding that completed Hobbs Act robbery is a crime of violence. *See Barrett*, 102 F.4th at 81-83; *Stoney*, 62 F.4th at 112-14; *Ivey*, 60 F.4th at 116-17; *Worthen*, 60 at 1070; *Green*, 79 F.4th at 923; *Diaz-Rodriguez*, 2023 WL 5355224, at *1; *Powell*, 2022 WL 17819775, at *2.

## CONCLUSION

This Court should affirm the judgment.

Respectfully submitted,

Ryan Raybould
United States Attorney

*/s/ Lauren C. Murphree*
Lauren C. Murphree
Assistant United States Attorney
Texas State Bar No. 24085059
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401-4002
Telephone: (806) 472-7322
lauren.murphree@usdoj.gov
Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,943 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Calisto MT font.

*/s/ Lauren C. Murphree*
Lauren C. Murphree