IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

# CASE NUMBER 25-10855

UNITED STATES OF AMERICA,
*PLAINTIFF-APPELLEE.*,

V.

CHARLES LENARD BROWNLEE,
*DEFENDANT-APPELLANT.*

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

## APPELLANT'S REPLY BRIEF

JASON D. HAWKINS
FEDERAL PUBLIC DEFENDER

J. MATTHEW WRIGHT
ASSISTANT FEDERAL PUBLIC DEFENDER
600 South Tyler Street
Suite 2300
Amarillo, Texas 79101
(806) 324-2370
Matthew_Wright@fd.org

Counsel for Appellant

# Table of Contents

Table of Authorities ........ iii

Reply Brief ........ 1

I. This Court should reverse or vacate the district court's suppression ruling........ 1

A. Appellate review is de novo because the Government accepted all of Mr. Brownlee's factual allegations. ........ 1

B. Mr. Brownlee has standing to challenge the unwarranted electronic surveillance. ........ 2

1. Mr. Brownlee's motion asserted that he occupied the Hyundai Santa Fe, and the suppression and trial records prove that fact........ 3

2. The district court predicated its ruling on a plainly incorrect assertion. ........ 4

3. The suppression and trial evidence confirm that Mr. Brownlee had *lawful* prior possession of the Hyundai sufficient to confer standing. ........ 4

C. This case is distinguishable from *United States v. Porter*. ........ 7

II. A jury can return a unanimous guilty verdict while disagreeing about whether robbery was completed or merely attempted. That means the theories are indivisible. ........ 8

Conclusion ........ 9

Certificate of Service ........ 10

Certificate of Compliance ........ 10

# Table of Authorities

## Cases

*Byrd v. United States*,
584 U.S. 395 (2018) ........................................ 6

*Rakas v. Illinois*,
439 U.S. 128 (1978) ........................................ 5

*United States v. Harrelson*,
705 F.2d 733 (5th Cir. 1983) ........................................ 2

*United States v. Hernandez*,
647 F.3d 216 (5th Cir. 2011) ........................................ 6

*United States v. Jones*,
565 U.S. 400 (2012) ........................................ 6

*United States v. Massi*,
761 F.3d 512 (5th Cir. 2014) ........................................ 1

*United States v. Porter*,
170 F.4th 381 (5th Cir. 2026) ........................................ 1, 7, 8

*United States v. Rico*,
51 F.3d 495 (5th Cir. 1995) ........................................ 2

## Constitutional Provisions

Fourth Amendment ........................................ 7, 9

## Statutes

18 U.S.C. § 924(c) ........................................ 1

## Reply Brief

Appellant Charles Lenard Brownlee appeals his conviction and sentence for twelve felonies. First, he challenges the district court's denial of his motion to suppress evidence seized as fruits of an unwarranted and unlawful search of a pervasive electronic locational surveillance database. Second, he challenges his convictions under 18 U.S.C. § 924(c), arguing that the predicate offense alleged in his case (Hobbs Act robbery) is indivisible from attempted robbery, which is not a crime of violence.

### I. This Court should reverse or vacate the district court's suppression ruling.

#### A. Appellate review is de novo because the Government accepted all of Mr. Brownlee's factual allegations.

On suppression, the parties agree that the Court should review the district court's legal and constitutional decisions de novo. (Brownlee Br. 22–23; U.S. Br. 13). The Government suggests that the Court should review the "evidence 'in the light most favorable to the Government,'" but that principle only applies if the district court actually convened an evidentiary hearing and made factual findings. *See United States v. Porter*, 170 F.4th 381, 384 (5th Cir. 2026); *United States v. Massi*, 761 F.3d 512, 518 (5th Cir. 2014).

In the absence of an evidentiary hearing, this Court and the district court must assume that all the movant's well-pleaded allegations are true. Federal courts cannot refuse to hold a hearing because the facts are "uncontested" and then resolve factual disputes against the moving party. A district court must conduct a suppression hearing

"when necessary to receive evidence on an issue of fact." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). A defendant is entitled to an evidentiary hearing if he "alleges sufficient facts which, if proven, would justify relief." *Id.* (citing *United States v. Smith*, 546 F.2d 1275 (5th Cir. 1977); *United States v. Poe*, 462 F.2d 195 (5th Cir.1972)). Mr. Brownlee's allegations in his initial motion were "'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" *Id.* (quoting *Poe*, 462 F.2d at 197); *see* ROA.129-159.

Here, Mr. Brownlee asked the district court to convene a hearing so it could make a suppression ruling based on a full, fair, and complete evidentiary record. ROA.132, 141. The Government successfully resisted that request, in part, by waiving its right to contest any of the relevant facts. *Compare* ROA.234 ("The parties disagree only on how the law should apply to the undisputed facts."), *with* ROA.420 (refusing to hold a hearing because the relevant facts were "uncontested"). The Government is therefore *not* entitled to any favorable inferences from the evidence.[1]

**B. Mr. Brownlee has standing to challenge the unwarranted electronic surveillance.**

The Government continues to argue that Mr. Brownlee had no cognizable possessory interest in his sister's car, despite the uncontested evidence that she routinely

[1] When reviewing the denial of a motion to suppress, this Court can consider evidence from the suppression hearing and from the trial record. *United States v. Rico*, 51 F.3d 495, 504 (5th Cir. 1995) (quoting *United States v. Basey*, 816 F.2d 980, 983 n. 1 (5th Cir.1987)). But without any suppression hearing at all, the Government is not entitled to favorable inferences from that evidence.

allowed Mr. Brownlee and his girlfriend to borrow the car. (U.S. Br. 14–19; *but see* ROA.234 (asserting that the "facts underlying" the suppression motion "are uncontested")). This argument is wrong.

**1. Mr. Brownlee's motion asserted that he occupied the Hyundai Santa Fe, and the suppression and trial records prove that fact.**

In his motion to suppress, Mr. Brownlee asserted that he was in the car on May 21, and he provided proof that his sister, Kearra Simmons, routinely allowed Mr. Brownlee and Ashley Scott to use Simmons's Hyundai Santa Fe. ROA.157.

The Government elicited even more proof of these facts at trial. Ashley Scott testified that she and Mr. Brownlee lived with Simmons most of the time they were together. ROA.1308. Simmons routinely "cook[ed]" for the couple when they stayed at her house. ROA.1325. In addition to the Hyundai, Mr. Brownlee "often" borrowed other items owned by Simmons, including her phone. ROA.1302.

This is, of course, a very common arrangement for family members living in the same home. There is nothing surprising about the fact that Simmons routinely allowed Mr. Brownlee to use her vehicle, on an as-needed basis. In fact, Simmons planned to *give* the Hyundai to Mr. Brownlee after she purchased the white Dodge Journey. ROA.1327. Nothing in the suppression or trial record even remotely suggests that Simmons placed any restrictions on Mr. Brownlee's use of the car, or that he ever took the car without Simmons's standing permission.

Again, if there were any doubt about this fact, it could have been resolved in an evidentiary hearing. By agreeing that the material facts were "uncontested," the Government waived its right to dispute them.

**2. The district court predicated its ruling on a plainly incorrect assertion.**

In his opening brief, Mr. Brownlee challenged the district court's inexplicable assertion that he failed to assert possession or occupancy of the Hyundai. (Brownlee Br. 46–47; *see* ROA.421). The Government does not defend that assertion on appeal, and the district court's "standing" decision cannot stand without it. In fact, the Government acknowledges that Mr. Brownlee possessed and occupied the Hyundai Santa Fe on *all* relevant occasions. (U.S. Br. 15). The district court's contrary finding was clearly erroneous, and that alone is reason to reverse its ruling on standing.

**3. The suppression and trial evidence confirm that Mr. Brownlee had *lawful* prior possession of the Hyundai sufficient to confer standing.**

The Government also admits that Mr. Brownlee had Simmons's express permission to possess the vehicle on May 21. (U.S. Br. 15). That surely gives him standing to contest the police's use of the Flock database to track the car's movements that day.

Even so, the Government argues that Mr. Brownlee's proof of standing fell short because he did not affirmatively and unequivocally prove that he had Simmons's permission on May 9, 13, and 18. (U.S. Br. 15).

As an initial matter, the Government is wrong to suggest that Mr. Brownlee was required to "prove" express permission prior to, and in the absence of, an evidentiary

hearing. Like the district court, the Government relies on the first footnote in *Rakas v. Illinois*, 439 U.S. 128, 131 (1978), to argue that Mr. Brownlee had an evidentiary "burden" to establish his own standing. (U.S. Br. 14; *see* ROA.420). But the Supreme Court clearly explained that the burden to establish standing arises *when prosecutors challenge standing*:

> The prosecutor's argument gave petitioners notice that they were to be put to their proof on any issue as to which they had the burden, and because of their failure to assert ownership, we must assume, for purposes of our review, that petitioners do not own the rifle or the shells.

*Rakas*, 439 U.S. at 131 n.1. The petitioners in that case *never* asserted any property or possessory interest, even when the case was before the Supreme Court. *Id.* ("Petitioners do not now assert that they own the rifle or the shells.").

The Government now claims that Mr. Brownlee's proof of *lawful* possession was insufficient as to *some* of the occasions he used Simmons's car. (U.S. Br. 15) ("Simmons's statements that Brownlee sometimes used the car do not unequivocally establish that Brownlee had permission to do so, and in any event, Brownlee never addressed his right to occupy the vehicle on May 9, May 13, or May 18—the dates of the first three robberies."). There are many problems with that argument.

First, it fails to grapple with the natural implication of the known facts. If Mr. Brownlee routinely used the car with his sister's express permission, and he did so on *one* of the occasions at issue, it naturally follows that he had her permission on prior occasions, too. First-year medical students are often taught the adage, "When you hear

hoofbeats, think horses—not zebras." The suppression and trial records here are covered in hoofprints; the Government is asking Mr. Brownlee to disprove the possibility that those prints were made by zebras, or perhaps by kangaroos wearing horse-hoof-shaped shoes.

Second, it insists on a level of granularity absent in the controlling precedents. In *United States v. Jones*, 565 U.S. 400, 402–03 (2012), the defendant had standing to contest the surveillance of his wife's automobile because it had been entrusted to him. He was not required to affirmatively prove that she expressly allowed him to use the car that day. In *United States v. Hernandez*, 647 F.3d 216, 220 (5th Cir. 2011), the defendant "demonstrated standing to challenge the use of the GPS device to follow the truck's path," even though he did not own the car, and without any express proof of the scope of the owner's authorization. And, most importantly, in *Byrd v. United States*, 584 U.S. 395, 408 (2018), the Supreme Court held that a driver had a reasonable expectation of privacy in a car (and standing to contest a search) even though his operation of the vehicle violated an express contract between the car's true owner and a bailee.

Mr. Brownlee did not steal Simmons's car. He used it with her permission. He had a reasonable expectation of privacy in the movements of that car while occupying it.

### C. This case is distinguishable from *United States v. Porter*.

About three weeks after Mr. Brownlee filed his opening brief, this Court rejected a similar Fourth Amendment argument in *United States v. Porter*, 170 F.4th 381 (5th Cir. 2026). The Government says *Porter* forecloses Mr. Brownlee's argument. The Government is wrong.

In *Porter*, the Court considered whether officers' use of an ALPR database counted as a "search," for purposes of the Fourth Amendment. In that case, the Government prevailed. *Porter*, 170 F.4th at 387. But the facts were very different, and this Court repeatedly emphasized the importance of those specific facts.

According to testimony from Porter's suppression hearing, the city of Gautier, Mississippi, has "no more than ten" ALPR cameras, and the officers only utilized "live" notifications over one or two days, in their attempts to find the suspect vehicle. *Porter*, 170 F.4th at 384. Unlike the pervasive blanket of surveillance in the DFW Metroplex, the Gautier cameras are positioned in such a way that officers cannot effectively track a vehicle's precise current movements. *Id.* at 384 (noting officers' inability to find the car "earlier that day and the day before," despite ALPR "hits"). Unlike the DFW Metroplex, Gautier police do not combine multiple ALPR surveillance systems like Vigilant cameras. (*See* Brownlee Br. 13; ROA.1119-1120).

Though the court held that the police's limited use of that limited system was not a search, the Court did not purport to address more pervasive systems like those at issue here:

> But the LPR technology *in the instant case* provides only periodic information about a vehicle's location when a vehicle passes one of its ten locations where an LPR camera is stationed in Gautier and *is much more limited* than CSLI and geofence data, which is capable of capturing a greater volume of comprehensive information with a higher degree of quality and precision.

*Porter*, 170 F.4th at 387 (emphases added); *see also id.* at 386 (applying a "particularly strong" form of deference because the suppression ruling was based on live testimony).

*Porter* had nothing to say about a system of cameras so pervasive that it would allow police to reconstruct someone's "pattern of life." ROA.1120. *Porter* did not speak to a system that would say not only when and where the target was driving, but also when they were "at home." ROA.1120; *see also* ROA.414 (finding that police were able to reconstruct when the Hyundai was parked in front of a residential address). *Porter* did not consider a search of at least thirty days of comprehensive location information.

**II. A jury can return a unanimous guilty verdict while disagreeing about whether robbery was completed or merely attempted. That means the theories are indivisible.**

The Government does not dispute the critical points in Mr. Brownlee's sentencing challenge: (1) divisibility depends on the necessity of unanimity; and (2) when it comes to robbery and attempted robbery, a jury need not be unanimous about which theory is proven. (Brownlee Br. at 52–56). That is another way of saying those two theories are indivisible. None of the published decisions cited by the Government address this.

## Conclusion

This Court should vacate the judgment below. It should hold that police performed a "search" under the Fourth Amendment when they utilized Flock Safety's cameras and database, and that Mr. Brownlee had standing to challenge that search. He also urges the Court to reverse the denial of his motion to dismiss the § 924(c) counts.

Respectfully submitted,

Jason D. Hawkins
Federal Public Defender for the
Northern District of Texas

*/s/ J. Matthew Wright*
Assistant Federal Public Defender
Texas Bar No. 24058188
600 South Tyler Street
Suite 2300
Amarillo, Texas 79101
Telephone: (806) 324-2370
Matthew_Wright@fd.org

*Attorneys for Mr. Brownlee*

## Certificate of Service

I filed brief via the Court's ECF system on June 25, 2026. Opposing counsel, a registered filer, is deemed served.

/s/ J. Matthew Wright

## Certificate of Compliance

This brief contains 2,124 words, exclusive of exempted portions.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style font. Footnotes are in 12-point font.

/s/ J. Matthew Wright